Stephen W. Rupp, Trustee (2824)
**McKAY, BURTON & THURMAN**
Attorneys for Trustee
170 South Main Street, Suite 800
Salt Lake City, UT 84101
Telephone: (801) 521-4135
Telefax: (801) 521-4252

## IN THE UNITED STATES BANKRUPTCY COURT FOR THE

## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| In re: | : Bankruptcy No. 08-26315 WTT |
| CALEB A. SITZMANN, | : (Chapter 7) |
| Debtor. | : |
| STEPHEN W. RUPP, TRUSTEE, | : Adversary Proceeding No. |
| Plaintiff, | : |
| -vs- | : |
| CALEB A. SITZMANN, | : |
| Defendant. | : |

## COMPLAINT

The Plaintiff, Stephen W. Rupp, complains and alleges of Defendant as follows:

### GENERAL ALLEGATIONS

1. The Defendant is a resident of Salt Lake County in the State of Utah and a debtor before this Court pursuant to the filing of a voluntary Chapter 7 Petition by the Defendant on September 19, 2008.

2. The Plaintiff, Stephen W. Rupp, is the Trustee duly appointed for the Chapter 7 estate of the Defendant.

3.      The jurisdiction of this Court is properly invoked under 28 U.S.C. §157 and §1334 and by General Order of Reference (DUCivR 83-7.1) from the United States District Court for the District of Utah. The matter is a core proceeding under 28 U.S.C. §157(b). Venue is proper in the Central Division for the District of Utah.

4.      The Defendant filed a Statement of Financial Affairs and Schedules on September 23, 2008. The debtor signed a declaration under penalty of perjury that he had reviewed the Statement of Financial Affairs and Schedules and that they were true and correct.

5.      The Defendant answered Questions 1 and 2 that his only income for the year 2008 as of the date of filing was $6,324.93 from employment. The Defendant stated in answer to Question 3 that he had repaid no creditor over $600.00 within 90 days prior to the filing of the bankruptcy petition and no insiders within the last year.

6.      The Defendant represented on Schedule B that he had no checking, savings or other financial accounts and stated in answer to Question 11 of the Statement of Financial Affairs that no financial accounts had been closed within one year prior to the filing of the bankruptcy petition.

7.      In answer to Question 10, the debtor disclosed a transfer of a time share to his parents, Val and Vida Sitzmann, approximately one month prior to the filing of the bankruptcy petition. This is the only transfer disclosed by the debtor in answer to Question 10 of the Statement of Financial Affairs.

8.      On or about September 21, 2006, the Defendant transferred a home and real property at Eagle Mountain, Utah to his parents. The debtor has never disclosed this transfer except in response to questioning at the First Meeting of Creditors.

9.      The debtor was directed at the First Meeting of Creditors to produce a copy of the appraisal which he stated was done for the purposes of determining the value of the property at the

time of the sale of the property to his parents. To date, the debtor has failed to produce a copy of the appraisal.

10.     The debtor has stated under oath that he realized approximately $26,000.00 to $27,000.00 from the sale of the property to his parents. According to documents produced, the debtor actually received $61,831.52.

11.     The debtor was directed at the First Meeting of Creditors to produce books and records concerning the disposition of the sale proceeds, including all investments and losses of the sale proceeds besides the approximate $11,000.00 lost by currency trading. To date, the debtor has failed to produce any books and records concerning the disposition or loss of the property sale proceeds except for the approximate loss of $11,000.00 in currency trading by the debtor of his own account.

12.     The debtor has represented under oath in answer to Question 1 and 2 of the Statement of Financial Affairs that he has had no more than $2,700.00 of income of any kind in the year 2007.

13.     The debtor has stated that he has filed no tax returns for 2007 because his income for 2007 did not exceed $3,600.00.

14.     According to the few account statements produced by the debtor, the debtor received and deposited no less than $21,388.00, not including 2006 tax refunds, from January 22, 2007 through June 13, 2007. According to account activity statements produced for approximately the first seven months of 2008, the debtor deposited in one account no less than $36,507.00 from January 2 through June 2, 2008.

15.     The directive issued at the First Meeting of Creditors on October 14, 2008 required that the debtor produce all personal and business books and records from January 1, 2008 to the

present. As noted above, the debtor produced no books and records for anytime after August 4, 2008.

16.     The debtor was directed to produce books and records concerning the various investments to which the debtor referred in explaining his loss of the real property sale proceeds. The books and records include contracts and statements including those specifically waiving rights in the event of loss of investment. As of the date of the filing of this complaint, the Defendant has failed to produce any books, records or documents concerning his investments, transfers or losses.

17.     The debtor has produced some account activity statements, some account statements, and some books and records regarding his receipt and the disbursement of sale proceeds, and some documents concerning the sale of the real property to his parents. The debtor has also produced a copy of his 2006 tax returns. In light of all that has been learned from the debtor's testimony at the First Meeting of Creditors, the debtor's statements and schedules, and the production received to date, the Trustee requested of the debtor by letter to debtor's counsel many books and records and information concerning the financial affairs and dealings of the debtor. A copy of that letter dated January 26, 2009 is attached as Exhibit "A".

18.     The Plaintiff admits that the letter speaks for itself. The letter generally requested of the debtor books, records, documents and information concerning unidentified receipts and disbursements from the debtor's bank accounts, identification of undisclosed incomes into the debtor's bank accounts, appropriate amendments to fully disclose incomes, accounts and other significant items omitted by the schedules in the debtor's statements and schedules, copies of cancelled checks and check ledgers or registers, explanations of payments to mortgage and loan companies, identification of transferees of disbursements from the debtor's accounts and identifying information concerning investments made and monies lost.

19.     As of the date of the filing of this complaint, the Defendant has failed to respond to the Trustee's letter of January 26, 2009. The Defendant has failed to produce any books or records in response to the letter. The Defendant has failed to give any explanation or excuse for his failure to respond to the Trustee's letter.

### FIRST CLAIM FOR RELIEF

20.     The Plaintiff incorporates by reference the prior allegations of this Complaint.

21.     The Defendant has knowingly and fraudulently in or in connection with this bankruptcy case made a false oath or account in both testimony given at the First Meeting of Creditors and in the debtor's statement of financial affairs and schedules.

22.     The Defendant is not entitled to a discharge under §727(a)(4)(A) of the Bankruptcy Code.

### SECOND CLAIM FOR RELIEF

23.     The Plaintiff incorporates by reference the prior allegations of this Complaint.

24.     The Defendant has concealed, or failed to keep or preserve recorded information, including books, documents, records and papers from which the debtor's financial condition or business transactions might be ascertained, or has knowingly and fraudulently withheld from the Trustee recorded information, including books, documents, records and papers, relating to the debtor's property or financial affairs.

25.     The Defendant is not entitled to a discharge under §727(a)(3) and (4)(D).

### THIRD CLAIM FOR RELIEF

26.     The Plaintiff incorporates by reference the prior allegations of this Complaint.

27.     The Defendant has failed to explain satisfactorily the loss of assets or deficiency of assets to meet the debtor's liabilities.

28. The Defendant is not entitled to a discharge under §727(a)(5) of the Bankruptcy Code.

### FOURTH CLAIM FOR RELIEF

29. The Plaintiff incorporates by reference the prior allegations of this Complaint.

30. The Defendant's failure to produce books, records, documents and information and the debtor's acts or conduct or failures to act or omissions have obstructed the Trustee's investigation and efforts to determine the source and nature of the debtor's incomes and the disposition or transfers of properties, including the debtor's receipt and transfer of $44,000.00 on or about June 21, 2006, debtor's receipt and disposition of $27,500.00 on September 27, 2006, and transfers of $16,000.00 on October 2, 2006, $5,400.00 on October 16, 2006, $7,200.00 on October 25, 2006, and $4,000.00 on October 19, 2006.

31. The debtor's failure to produce books and records and information concerning the source of the funds from which these transfers were made and information concerning these transfers have essentially prevented the Trustee from realizing the value of these properties or claims for the bankruptcy estate. The debtor has failed to disclose any consideration for any of these transfers made, all transfers having been made within four years prior to the filing of this bankruptcy case.

32. The debtor has failed to disclose the reason and the transferee of many other transfers, though those identified above are the most significant since year 2006.

33. Due to the debtor's acts and conduct or failures to act and omissions, the Trustee has been precluded from realizing the value of property, transfers or claims of the bankruptcy estate, which failure has resulted in a direct or indirect benefit to the debtor or others and conversion of property of the estate.

34. The Plaintiff is entitled to a money judgment against the Defendant in the amount of no less than $104,000.00 or such amount to be determined at trial.

WHEREFORE, the Plaintiff requests relief and remedy against the Defendant as follows:

1. An appropriate judgment or order denying the Defendant a discharge with prejudice under §727 of the Bankruptcy Code.

2. A money judgment for the Plaintiff against the Defendant in the amount of $104,000.00 or such amount to be determined at trial.

3. Such other relief and remedy as deemed appropriate by the Court under the facts and circumstances.

DATED this ___11___ day of March, 2009.

McKAY, BURTON & THURMAN

By _____
Stephen W. Rupp
Attorneys for Chapter 7 Trustee/Plaintiff

**Plaintiff's Address:**
170 South Main Street, Suite 800
Salt Lake City, UT  84101
ka\pl\sitzmann.com

**EXHIBIT "A"**

Case 08-26315    Doc 21    Filed 03/11/09    Entered 03/11/09 15:41:01    Desc Main
Document    Page 8 of 14

# McKay, Burton & Thurman
### A PROFESSIONAL CORPORATION

DAVID L. BIRD
REID TATEOKA
STEPHEN W. RUPP
JOEL T. MARKER
ALLAN O. WALSH*
GREGORY J. ADAMS
JOHN D. MORRIS‡
BRUCE J. BOEHM*
JEREMY C. SINK
JAMIE L. NOPPER
NICKOLAS S. RICE
QUINN A. SPERRY

* ALSO ADMITTED IN CALIFORNIA
‡ ALSO ADMITTED IN COLORADO

Attorneys and Counselors at Law
170 SOUTH MAIN STREET, SUITE 800
SALT LAKE CITY, UTAH 84101
(801) 521-4135

DAVID L. McKAY
(1901-1993)

WILLIAM T. THURMAN
(1908-2001)

WILFORD M. BURTON
(1910-2006)

RETIRED
BARRIE G. McKAY

FAX 801-521-4252

January 26, 2009

Scott B. Mitchell
2469 East 7000 South, Suite 204
Salt Lake City, UT 84121

                              *RE:   Caleb Sitzmann*
                                        *Bankruptcy No.  08-26315 WTT*

Dear Scott:

      I have received the production under your letter of January 6, 2009. Your letter correctly notes that there are still items missing as far as the directive issued at the First Meeting of Creditors.

      You produced a tax return with your letter of September 20, 2008. Though your letter refers to the tax returns as for the year 2007, the copy of the tax return attached was for the year 2006. After reviewing that which has been produced, I hereby request that the debtor produce full and complete copies of the debtor's personal and business tax returns for 2007. I also request full and complete copies of the debtor's personal and business income tax returns for the year 2008. I would request that copies of these tax returns be produced on or before February 15, 2009. The debtor should be reminded that tax refunds are property of the estate and need to be turned over to the Trustee.

      I raise the following questions in view of that which has been produced to date.

      First, Mr. Sitzmann represented in answer to Questions 1 and 2 that his only income for year to date 2008 was $6,324.93. In review of the statement of activity for checking account 3926 (I assume at Washington Mutual) I note deposits or credits to the account of $36,507.00 from January 2nd through June 2nd, 2008.

Scott B. Mitchell
January 26, 2009
Page 2

Mr. Sitzmann failed to disclose any account in answer to Item 2 of Schedule B or any closed financial account in answer to Question 11 of the SOFA.

Mr. Sitzmann has failed to produce any account statement for year 2008 and though the directive requested production from January 1 to the present, the account activity statement goes no further than August 4, 2008.

There is no statement concerning the debtor's receipt and disposition of income from August 4 through the present.

Mr. Sitzmann has produced no cancelled checks or check ledgers. Please have Mr. Sitzmann produce a copy of every check issued from checking account 3926 which equals or exceeds $200.00.

Please have Mr. Sitzmann explain why he makes payments to Greenpoint Mortgage.

Please have Mr. Sitzmann explain his dealings with Paychex, including the purpose of EIB invoices and TPS taxes.

Please have Mr. Sitzmann explain the payments to "Powernet Global."

Please have Mr. Sitzmann explain the income and deposits which he had received into the account 3926.

According to the documents produced, Mr. Sitzmann should and appears to have received $61,831.00 from his parent's purchase of the Eagle Mountain property. My notes indicate that Mr. Sitzmann represented that he received only $27,000.00. Please have Mr. Sitzmann explain the discrepancy and difference of these figures.

I have also received with the production the IBFX, LLC Daily Report from January 1, 2006 through January 1, 2009. It would greatly help me if Mr. Sitzmann could explain the statement and report. For example, what is a "lot," why is "price" referred to twice, what is a R/O swap, what is the meaning of "S/L," "T/P," and "trade P/L?"

Since review of the production under your letter of January 6th and preparing that portion of this letter above, I received the production under your letter of January 8, 2009. Please have Mr. Sitzmann address these additional following questions and issues.

Please explain why he makes payments to Greenpoint Mortgage. Please have Mr. Sitzmann explain why he makes payments to "Loan Servicing." Mr. Sitzmann received $45,000.00 June 21, 2006 into his UCCU account. The next day, $44,000.00 was withdrawn.

Scott B. Mitchell
January 26, 2009
Page 3

Please have Mr. Sitzmann explain the source of the $45,000.00 and then provide all pertinent information concerning the $44,000.00 withdrawal, including the disposition of the $44,000.00, any transferee(s) of any portion of the $44,000.00, the reason for the transfers and any other information which would answer questions concerning the receipt, withdrawal and disposition of these funds. I would ask that as you and Mr. Sitzmann provide answers and respond to this letter that you would consider both what has been produced, what has been requested, and the answers and responses to be provided and anticipate what additional questions will reasonably arise and need to be answered and address those in order that we might get some definitive information concerning Mr. Sitzmann's financial affairs and dealings.

Mr. Sitzmann received $62,500.56 on September 26, 2006 into the UCCU savings account. I assume that this is the proceeds of the sale of the Eagle Mountain property to his parents. If I am wrong, please correct me. While the records demonstrate the disposition of most of these funds, there is a withdrawal of $27,500.00 on September 27, 2006. I believe nothings been provided to explain where the $27,500.00 went. Again, please have Mr. Sitzmann provide a statement and explanation concerning the disposition of those funds and produce the books and records which will assist us in tracing those funds and their disposition. Again, Mr. Sitzmann should certainly include in the information and explanation identification of any transferees of any portion of those funds and the reason for such transfer.

Mr. Sitzmann should provide the same information concerning the withdrawal of $16,000.00 from the UCCU savings account on October 2, 2006.

There are other withdrawals for which there appears to be no explanation concerning the disposition of the funds. Please have the debtor provide similar information to that requested above for the following:

1. $5,400.00 withdrawal on October 16, 2006.

2. $7,200.00 withdrawal on October 25, 2006.

3. Please have Mr. Sitzmann produce a copy of Check No. 1003 by which $4,000.00 was disbursed on October 19, 2006 from the UCCU checking account.

4. Please have Mr. Sitzmann fully explain the source of his receipt and deposit of the following funds:

    A. $5,000.00 received on October 17, 2006 into the UCCU savings account.
    B. The $10,000.00 deposit on November 30, 2006 to the UCCU checking account.
    C. The $13,024.00 deposit made on January 22, 2007 into the U of U Credit

Scott B. Mitchell
January 26, 2009
Page 4

          Union account.

D.    The $3,745.92 withdrawal by wire transfer on December 8, 2006 from the UCCU checking account.

In questioning Mr. Sitzmann at the First Meeting of Creditors concerning the disposition of the funds received from the sale of the Eagle Mountain property, Mr. Sitzmann explained that he lost money with IBFX or Interbank FX. I appreciate the statement provided. If I understand the statement correctly, Mr. Sitzmann lost $11,227.67. As I have tried to match up the IBFX statement with the bank account statements, it appears that those items identified as "balance" on the IBFX statement represent payments made by Mr. Sitzmann to IBFX. If true, I have been able to find a payment to Interbank FX on October 23, 2006 from the UCC Credit Union and another on November 24, 2006 from UCCU Credit Union. Though I have found two, according to the IBFX report, there are at least four. I would ask Mr. Sitzmann to identify where Interbank FX was paid the other two payments and identify any other transfers to the IBFX account.

Mr. Sitzmann stated that he lost the money not only with IBFX currency trading but also lost money through three different other investments. The accounting which has been produced is not detailed enough to identify other investments made, including identification of the transferee and the reason for or the nature of the investment. Please have Mr. Sitzmann identify other transfers and investments made. This must include identification of the transferee(s) of the funds.

While the issues and questions I've identified are many, they are not all that might be asked. There are many other transfers that could use explanation. However, I believe if it becomes necessary to ask more and other questions, perhaps we will do it through a 2004 examination. In any case, I would request that Mr. Sitzmann consider and thoroughly respond to the questions and issues identified in this letter. I would hope to receive Mr. Sitzmann's response within two weeks of the date of this letter. If there are other matters to discuss or questions, please feel free to contact me.

                                              Best regards,

                                              Stephen W. Rupp

SWR:kp
ka\co\mitchells.ltr

FORM 104 (10/06)

FILED IN THE
UNITED STATES
BANKRUPTCY COURT

| ADVERSARY PROCEEDING COVER SHEET (Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER (Court Use Only) |
|---|---|
| | DISTRICT OF UTAH |

| PLAINTIFFS<br>STEPHEN W. RUPP, TRUSTEE | DEFENDANTS<br>CALEB A. SITZMANN |
|---|---|
| ATTORNEYS (Firm Name, Address, and Telephone No.)<br>Stephen W. Rupp, McKay, Burton & Thurman<br>170 South Main Street, Suite 800, SLC, UT | ATTORNEYS (If Known)<br>84101 |
| PARTY (Check One Box Only)<br>☐ Debtor     ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor   ☐ Other<br>☒ Trustee | PARTY (Check One Box Only)<br>☒ Debtor     ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor   ☐ Other<br>☐ Trustee |

CAUSE OF ACTION (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

**NATURE OF SUIT**
(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☒ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny
(continued next column)

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce/sep property settlement/decree
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – reinstatement of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ 104,000.00 |
| Other Relief Sought | |

FORM 104 (10/06), Page 2

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | | |
|---|---|---|---|
| NAME OF DEBTOR<br>Caleb A. Sitzmann | | BANKRUPTCY CASE NO.<br>08-26315 WTT | |
| DISTRICT IN WHICH CASE IS PENDING<br>UTAH | DIVISIONAL OFFICE<br>CENTRAL | NAME OF JUDGE<br>William T. Thurman | |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | | |
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. | |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISIONAL OFFICE | NAME OF JUDGE | |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | | | |
| DATE<br>March 11, 2009 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Stephen W. Rupp, Trustee | | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet, if it is required by the court. In some courts, the cover sheet is not required when the adversary proceeding is filed electronically through the court's Case Management/Electronic Case Files (CM/ECF) system. (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Parties.** Give the names of the parties to the adversary proceeding exactly as they appear on the complaint. Give the names and addresses of the attorneys if known.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not presented by an attorney, the plaintiff must sign.